IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ROBERT DRAIN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 10 C 3485 |
| **Harvey Police Officers** | ) |
| **BARBEE, SGT. SHANE GORDAN,** | ) |
| **MATTHEWS, WALZ, BISCHOFF, and** | ) |
| **THE CITY OF HARVEY,** | ) |
| | ) |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Drain ("Drain") sued the City of Harvey, Illinois ("the City") and several of its police officers – Sergeant Shane Gordan ("Gordan"), and Officers Leonard Barbee ("Barbee"), Ryan Matthews ("Matthews"), Hal Bischoff ("Bischoff"), and Daniel Walz ("Walz") – asserting multiple claims under 42 U.S.C. § 1983, and a state-law claim for malicious prosecution. Defendants have moved for summary judgment. The motion is granted in part and denied in part.

I.

Drain's suit arises out of two separate encounters with the defendant officers. The first took place in May 2009, when Drain was pulled over in the driveway of his home by Officer Bischoff. Drain alleges that Bischoff, acting on orders from Gordan, ransacked his car and had it towed. The second episode occurred in February 2010, when Drain was arrested by Barbee, Walz, and Matthews for

battery in connection with an altercation with his brother-in-law, Clifton Tucker ("Tucker"). Drain claims that the officers had no basis for arresting him because the altercation was nothing more than a shouting match. He insists that he never "battered" or had any physical contact with Tucker. As with the May 2009 incident, Drain claims that the arrest was ordered or encouraged by Gordan.

According to Drain, these incidents were intended to retaliate against him for two previous lawsuits that he brought against Harvey police officers. The first suit, filed in January 2006, asserted claims for false arrest, unlawful seizure, and malicious prosecution. The second suit, filed in June 2007, asserted claims for false arrest, illegal search of his home, violation of his due process rights, conversion, and conspiracy. The suits were ultimately settled in September 2007 and January 2008, respectively. Although Gordan was a defendant in the 2007 suit, none of the other officers in this action was a party to the earlier cases.

In addition to the car-towing incident and the (alleged) false arrest, Drain claims that Gordan has harassed him in numerous other ways in the months after Drain filed suit against him. For example, Drain claims that Gordan has followed him in his patrol car and pulled him over for no reason. He also claims that Gordan has insulted him with vulgar hand-gestures, and that Gordan once remarked to his wife, "Tell your husband I'm still looking for him. I'm going to get him."

II.

Summary judgment is proper where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence, and all reasonable inferences therefrom, must be considered in the light most favorable to the non-moving party. *E.g.*, *Miller v. Illinois Dept. of Transp.*, 643 F.3d 190, 192 (7th Cir. 2011).

In Count I of his complaint, Drain alleges a § 1983 claim for the unreasonable seizure of his vehicle in May 2009. Defendants initially argue that Drain lacks standing to assert the claim because the vehicle was registered in his wife's name. As a result, defendants claim, Drain had no property or possessory interest in the vehicle, and his fourth amendment rights could not have been violated by the vehicle's seizure. Since fourth amendment rights cannot be asserted on another's behalf, *see, e.g., United States v. Figueroa-Espana*, 511 F.3d 696, 703 (7th Cir. 2007) ("Fourth Amendment rights are personal rights which ... may not be vicariously asserted.") (quotation marks omitted), defendants contend that Drain lacks standing to assert the claim.

This argument is flawed in at least two ways. As an initial matter, the Supreme Court has made clear that the question presented in claims of this kind is not properly framed as one of "standing." *See, e.g., Rakas v. Illinois*, 439 U.S. 128, 140 (1978) ("[T]his

Court's long history of insistence that Fourth Amendment rights are personal in nature has already answered many of these traditional standing inquiries, and we think that definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing."). Second, and more to the point, defendants are incorrect in assuming that Drain has no property or possessory interest in the vehicle simply because it is not registered in his name. Defendants offer no argument or authority to support this proposition. Indeed, they ignore clear case law to the contrary. *See, e.g.*, *United States v. Posey*, 663 F.2d 37, 40-41 (7th Cir. 1981) ("Whether an individual's fourth amendment rights are implicated by a government search or seizure turns upon the individual's legitimate expectations of privacy, rather than principles of common law property law. The fact that Posey owned neither the Ford automobile nor the guns is indeed relevant to the inquiry of whether he had a legitimate expectation of privacy. However, Posey plainly had an expectation of privacy in an automobile owned by his wife and over which he was exercising exclusive control pursuant to her permission at the time of the search."); *see also United States v. Battiste*, 343 Fed. App'x. 962, 966, (5th Cir. 2009) ("A Fourth Amendment possessory interest is not limited to formal legal title; a property interest in the item searched is only one factor in the analysis, and lack thereof is not dispositive.") (quotation marks omitted).

Defendants argue that they are entitled to summary judgment on Count I at least insofar as it is asserted against Gordan, because there is no evidence that Gordan had anything to do with the seizure. It is undisputed, however, that at the time of the stop, Gordan radioed Bischoff and asked Bischoff to call him back on his phone. It is also undisputed that Bischoff phoned Gordan, and that Bischoff later told Drain that Gordan had directed him to tow Drain's vehicle. To be sure, Bischoff later testified that Gordan had not instructed him to tow the vehicle, and that he (Bischoff) had made the statement only in an attempt to obtain Drain's cooperation. But the plausibility *vel non* of Bischoff's story is a question for the jury and cannot be the basis for summary judgment. Thus, defendants' motion for summary judgment is denied with respect to Count I.

In Count II, Drain asserts a § 1983 claim against Barbee, Matthews, Walz, and Gordan for his alleged false arrest in February 2010. "To prevail on a claim of false arrest, the plaintiff must show there was no probable cause for his arrest." *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010). "Probable cause exists if an officer reasonably believes, in light of the facts known to [him] at the time, that a suspect had committed or was committing an offense." *Id.* (quotation marks omitted).

Defendants argue that Count II fails because they had probable cause to arrest Drain for battery. Under Illinois law, "(a) A

person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3.  Defendants claim that probable cause was supported by the following evidence: (1) a call was placed to Harvey 911 requesting police because "a big heavyset black dude" in a light shirt and gray jacket was "beating up a young guy" at 14624 Jefferson Street;(2) Drain is a heavyset African American male; (3) the arresting officers were informed by the police dispatcher that a "ten-ten" involving two black males was in progress at the address in question; (4) Clifton Tucker and Drain had been engaged in a loud argument at the location in question; (5) after arriving on the scene, Officer Barbee observed that Tucker had blood on his face; and (6) Drain yelled and screamed at his wife and called her a bitch.

Drain points out that, despite defendants' insistence to the contrary, the evidence set forth above is disputed.  Drain takes particular issue with defendants' reliance on evidence relating to the 911 transmissions.  In a separate motion, Drain moves to strike all references to such evidence, objecting that the defendants failed to file a recording or transcription of the transmissions. He also complains that defendants' account of the recording was not supported by an authenticating affidavit, that the recording is inaudible, and that defendants have offered no basis for the meaning

they have assigned to police code terminology used in the transmission (in particular, the term "ten-ten").

In response to the motion to strike, defendants submitted a copy of the audio recording, along with a written transcript of the recording, and an authenticating affidavit. Ultimately, however, the 911 transmissions are not determinative, for even if they were factored into the analysis, a disputed issue of fact would remain as to whether Barbee and Walz had probable cause to arrest Drain.[1] This is because Drain, Tucker, and Drain's wife each testified that the altercation between the men was strictly verbal and that the two never came to blows. Tucker further testified that he told one of the officers on the scene that it was a "verbal argument" and that Drain had not hit him. Tucker Dep. at 40. Drain thus fiercely denies that Barbee or any of the other officers could have observed any signs of injury on Tucker. Even assuming that the dispatcher told the officers that a "ten-ten" was in progress at the location, and even assuming that "ten-ten" is police code for "fight," they would not have had probable cause to arrest Drain for battery if Tucker showed no signs of injury and expressly denied having been hit by Drain.[2]

---

[1] Accordingly, I deny the motion to strike as moot.

[2] I note that defendants do not invoke the doctrine of qualified immunity, under which they would be required only to show that they had "arguable probable cause" to arrest Drain for battery. *See, e.g.*, *Wollin v. Gondert*, 192 F.3d 616, 621 (7th Cir. 1999) ("With an unlawful arrest claim in a § 1983 action when a defense

Defendants separately argue that summary judgment should be granted as to Matthews and Gordan, since there is no evidence that the latter defendants participated in Drain's arrest. I agree. The record shows that Matthews had no contact with Drain until after he had been arrested. His interaction with Drain was limited to transporting him to the police station. Even assuming that Drain had been falsely arrested, Matthews cannot be held liable for the violation simply by transporting him after the fact. *See, e.g.*, *Morfin v. City of East Chicago*, 349 F.3d 989, 1000-01 (7th Cir. 2003) (officer could not be held liable for civil rights violations where officer's only involvement was to transport plaintiff to police station for booking); *see also Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998) ("[O]nce Jackson was arrested, the constitutional violation she alleges had already taken place. Officer Keating would have had to have undertaken some action prior to, or perhaps at the time of, Lieutenant Hoffenkamp's order to arrest Jackson in order to have 'caused' or 'participated in' it.

---

of qualified immunity has been raised, we will review to determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed. Courts have referred to the second inquiry as asking whether the officer had 'arguable' probable cause.") (citations omitted). Nor do defendants argue that probable cause existed to arrest Drain for an offense other than battery (e.g., assault, disturbing the peace, etc.). *Cf. United States v. Bullock*, 632 F.3d 1004, 1021 n.3 (7th Cir. 2011) ("An arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that some criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect.").

That is not the case here--Keating signed the criminal complaint against Jackson only after she was in custody and 'seized' within the meaning of the Fourth Amendment.").

Nevertheless, Drain contends that a triable issue of fact remains concerning the extent of Matthews's role in the arrest. First, Drain disputes defendants' claim that he was already in handcuffs when Matthews walked over to Barbee's patrol vehicle. Drain suggests that this testimony conflicts with Matthews's testimony that, when he first arrived on the scene, Drain was not in handcuffs but was instead walking down the street, away from the site of the confrontation. But the fact that Davis was not handcuffed when Matthews arrived on the scene in no way contradicts Matthews's testimony that Drain was in handcuffs when he walked over to Barbee's vehicle to take Drain into custody. More fundamentally, Drain's argument conflates the issue of when he was handcuffed with the issue of when he was under arrest. *See, e.g.*, *Brunner v. McKillip*, 488 F. Supp. 2d 775, 783-84 (W.D. Wis. 2007) ("The Fourth Amendment's protection does not begin at the moment a citizen is handcuffed. It governs 'seizures' . . . which do not eventuate in a trip to the station house and prosecution for crime —'arrests' in traditional terminology.") (quotation marks omitted). Drain himself asserts that Barbee placed him in custody, Pl.'s Resp. 56.1 Stmt. ¶ 53, and Drain does not allege that Matthews had any contact with him prior to this point. Hence, even if it were unclear precisely

when Drain was handcuffed, this would not raise a question of fact as to whether Drain was under arrest before Matthews had any contact with him.

Second, Drain argues that Matthews "played a big part in manufacturing the false story that Drain had battered Clifton Tucker." Here, Drain notes that in his deposition, Matthews claimed to have spoken with Tucker and Drain's wife at the scene of the arrest. As a result, Drain argues, Matthews "would have known, on scene, before Drain's arrest, that Clifton Tucker was not claiming that he had been injured by Robert Drain," and "would have had zero probable cause for putting Drain in his police car." But Matthews testified that Tucker would not talk to him. While Tucker claims that he told one of the officers on the scene that Drain never hit him, there is no evidence that the officer was Matthews. And while Matthews testified that he talked to Drain's wife, there is no evidence that she told Matthews that Tucker had not been hit. Tellingly, Drain does not make any definitive claim about what Matthews was actually told. He merely surmises that if Matthews had talked to Tucker or his wife, Matthews "would have known" that Tucker denied having been hit by Drain. There is no concrete evidence for Drain's claim that Matthews knew probable cause was lacking for his arrest.

Drain's final argument concerning Matthews rests on the fact that Matthews, like Barbee, testified in his deposition that

Tucker's face was bloody. Drain maintains that if his and Tucker's testimony is to be believed, Matthews's testimony cannot be true, since Tucker had not been hit and had no signs of injury. According to Drain, this shows that Matthews was fully aware that probable cause was lacking for Drain's arrest, and that Matthews's dissembling is evidence of his involvement in the conspiracy to cover up the violation of his civil rights. Once again, however, Matthews can be held liable for false arrest only if he participated in Drain's arrest. As already explained, Matthews's involvement came only after Drain had been arrested. Since Matthews did not participate in Drain's arrest, he cannot be held liable for false arrest. Nor can Matthews be held liable as a co-conspirator for the other officers' actions in arresting Drain. Since there is no evidence that Matthews was aware that probable cause was lacking, there is no evidence that he had any agreement with the other officers to arrest Drain without probable cause.

There is even less evidence linking Gordan to the February 2010 arrest. Indeed, Drain does not fully explain the way in which he believes Gordan could have been involved in the arrest. Defendants have submitted a time sheet purporting to show that Gordan was not scheduled to work on the date and time in question. Drain objects that the document is hearsay and has not been authenticated. But even excluding the time sheet, Drain has not adduced sufficient affirmative evidence that Gordan played any role in the incident.

The evidence on which Drain relies is of two sorts. First, he cites his own testimony that the booking officer who released him from jail after he posted bond on the evening of the arrest was later reprimanded by Gordan. This statement is included among the statements of additional fact filed by Drain in response to defendants' motion for summary judgment. Defendants did not respond to any of Drain's statements of additional fact. Under Local Rule 56.1, such uncontroverted statements may be deemed admitted. Even if true, the statement is not evidence that Gordan had anything to do with the arrest; at most, it is evidence merely of Gordan's *ex post* reaction to Drain's arrest.

Drain also argues that Gordan's involvement can be inferred on the basis of Gordan's alleged history of harassment and antagonism towards him. But even assuming the truth of Drain's allegations regarding Gordan's harassment, Drain offers nothing but supposition and speculation to specifically connect Gordan to the February 2010 arrest. This is not enough to withstand summary judgment. *See, e.g.*, *Gunville v. Walker*, 583 F.3d 979, 986 (7th Cir. 2009) ("[A] party must present more than mere speculation or conjecture to defeat a summary judgment motion.") (citing *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir. 1999)). Moreover, given how rapidly the situation unfolded – the officers were dispatched to the scene within seconds of receiving the 911 call reporting the

altercation – it is difficult to see how Gordan could have learned of the incident before it occurred.  For these reasons, summary judgment is granted to Matthews and Gordan on Count II, but denied as to the remaining officers.

Count III of Drain's complaint asserts a claim for malicious prosecution arising out of the February 2010 arrest.  "To state a cause of action for malicious prosecution, the plaintiff must allege facts showing (1) the commencement or continuance of a criminal or civil judicial proceeding by the defendant; (2) a termination of that proceeding in favor of the plaintiff; (3) the absence of probable cause for the proceeding; (4) the presence of malice; and (5) damages to the plaintiff resulting from the commencement or continuance of that proceeding." *Burghardt v. Remiyac*, 565 N.E.2d 1049, 1051 (Ill. App. Ct. 1991) (emphases omitted).

As with claims for false arrest, it is well-settled that "[t]he existence of probable cause is a complete defense to a malicious prosecution cause of action." *Id.* at 1052.  Since Drain has raised a triable issue of fact as to whether the officers had probable cause for his arrest, this defense is not available to the defendants here.  As a second basis for summary judgment on Count III, defendants argue that Drain cannot show that the proceedings were terminated in his favor.  It is undisputed that the battery charges against Drain were dropped through entry of a nolle prosequi order.  But this fact, without more, cannot establish whether the

proceedings were terminated in Drain's favor. *See, e.g.*, *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925-26 (7th Cir. 2001). Rather, "the plaintiff bears the burden of showing that the nolle prosequi was entered for reasons consistent with his innocence." *Id.* at 925. In other words, a plaintiff must show that "[t]he circumstances surrounding the abandonment of the criminal proceedings ... compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Id.* (quotation marks omitted).

The record in this case does not disclose the exact reason for the nolle prosequi order, and the parties' arguments on the issue are generally unhelpful. Defendants argue that they were unable to prosecute because Tucker failed to appear in court for the hearing on the charges. When it became clear that Tucker was not present, the charges were stricken with leave to reinstate. Defs.' Ex. R. at 3-4. Beyond this, the record is empty. Thus, for example, the record leaves unclear what efforts, if any, were subsequently made to locate Tucker, and precisely why the state opted never to reinstate the charges against Drain. Since a question of fact exists as to whether the proceedings were terminated in Drain's favor, defendants are not entitled to summary judgment on this basis.

However, defendants argue that summary judgment is at least warranted as to Walz, Matthews, and Gordan, since there is no evidence that any of these officers were involved in Drain's

prosecution.  Defendants point out that none of these officers signed the criminal complaint against Drain or had any involvement with Drain's subsequent prosecution.  Count III fails as to these officers, they argue, because "[a]n individual cannot be held liable in a § 1983 action unless he caused or participated in [the] alleged constitutional deprivation." *Id.*

This argument is not quite right, since Drain's malicious prosecution claim is brought under Illinois law, not § 1983. Indeed, the Seventh Circuit has held that there is no cause of action under § 1983 for malicious prosecution.  *See, e.g.*, *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011).  Under Illinois law, it is not necessary to show that the defendants signed the plaintiff's complaint or were involved in the plaintiff's subsequent prosecution.  *See, e.g.*, *Frye v. O'Neill*, 520 N.E.2d 1233, 1240 (Ill. App. Ct. 1988) ("Liability for malicious criminal prosecution is not confined to situations where the defendant signed a complaint against the plaintiff.").  Rather, a defendant may be held liable for malicious prosecution if he "initiated the criminal proceeding" or his participation in proceeding had "so active and positive a character as to amount to advice and cooperation."  *Id.*

Yet when judged in relation to this standard, defendants are ultimately correct that there is not enough evidence to hold Walz, Matthews, or Gordan liable for malicious prosecution.  The only evidence Drain cites in support of his claim against Walz is the

fact that Walz noted the charge of battery on an arrest slip relating to the incident. Pl.'s Resp. 56.1 Stmt. ¶ 96. Drain cites no evidence to suggest that the arrest slip, or any other action on Walz's part, played any role in Drain's arrest. And while the evidence is sufficient to support Walz's liability for false arrest, that evidence, without more, cannot support his liability for malicious prosecution. As explained by the Seventh Circuit, "to maintain a malicious prosecution suit against the arresting officers, [a plaintiff] must allege more than a lack of probable cause; rather, he must allege that the officers committed some improper act after they arrested him without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." *McDade v. Stacker*, 106 Fed. App'x. 471, 475 (7th Cir. 2004) (quotation marks omitted); *see also Richardson v. City of Chicago, Ill.*, No. 08 C 4824, 2011 WL 862249, at *9 (N.D. Ill. Mar. 10, 2011). Since Drain has pointed to no evidence of such conduct on Walz's part, defendants are granted summary judgment on Count III insofar as it is asserted against Walz.

The evidence is likewise insufficient as to Matthews and Gordan. As already explained, Drain has failed to produce evidence indicating that Gordan played any role in his arrest. He also cites no evidence that Gordan made any statements that contributed to

Drain's prosecution. As for Matthews, the evidence shows at most that he merely transported Drain to the police station. As previously explained, there is no evidence that Matthews could have been aware that probable cause was lacking for Drain's arrest, nor any evidence that Matthews took any action to encourage Drain's prosecution. In short, the record does not show that Walz's, Matthews's, or Gordan's role had "so active and positive a character as to amount to advice and cooperation." Thus, while I deny summary judgment on Count III as to Barbee, I grant the motion as to Walz, Matthews, and Gordan.

Count IV of Drain's complaint asserts a § 1983 claim for conspiracy. "To establish a prima facie case of civil conspiracy, a plaintiff must show (1) an express or implied agreement among defendants to deprive the plaintiff of his constitutional rights, and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Washington v. Amatore*, No. 10 C 442, 2011 WL 1403168, at *2 (N.D. Ill. Apr. 13, 2011). "To prove a conspiracy to deprive him of his constitutional rights, the plaintiff must show that the parties directed themselves toward an unconstitutional action by virtue of a mutual understanding, and that they had a 'meeting of the minds.'" *Id.*

Drain alleges that the seizure of his car and his (allegedly) false arrest were part of a conspiracy on the part of all of the defendant officers to harass him. The record does not support this

assertion. Absent evidence of Gordan's involvement in the arrest, there is no support for Drain's theory that the vehicle's seizure and his arrest form part of a single, overarching agreement to violate his rights. Defendants are therefore entitled to summary judgment on Count IV.

Finally, in Count V of his complaint, Drain asserts a § 1983 claim for retaliation. In particular, he contends that the May 2009 and February 2010 incidents were designed to retaliate against him for his previous suits against Harvey police officers. "To maintain a First Amendment retaliation claim, a plaintiff must establish (1) that she engaged in a constitutionally protected activity and (2) that the protected conduct was a 'substantial or motivating factor' in defendants' challenged action." *Lyttle v. Killackey*, 528 F. Supp. 2d 818, 827 (N.D. Ill. 2007).

Defendants contend that, with the exception of Gordan, none of the officers had any knowledge of Drain's earlier suits, and that, consequently, Drain's earlier suits could not have been a motivating factor in their actions. In rebuttal, Drain cites testimony by Matthews and Gordan that Drain was "a common topic of conversation in the police station." Pl.'s Resp. 56.1 Stmt. ¶ 81. But Matthews testified only that there was "[t]alk around the station, I mean, about the Drain Family; just forewarning us about the violent tendencies they can have towards police officers," and that "[b]asically they will fight us, the police." Matthews Dep. at 9-

10. Moreover, while Matthews stated that he was unable to remember exactly who had made these remarks, he testified unequivocally that he had not heard them from Gordan.  Matthews Dep. at 10.  For his part, Gordan was asked whether he had "ever told other police officers that Robert Drain is the kind of person who will fight them," to which he replied that it was possible but that he could in recall.  Gordan Dep. at 8.  Conspicuously absent from the testimony is any mention of Drain's prior lawsuits against him and other officers.  Once again, Drain's argument falls back on suspicion and speculation and offers no concrete evidence. Defendants are therefore entitled to summary judgment on Count V.

### III.

For the foregoing reasons, defendants' motion for summary judgment is denied as to Count I; granted as to Matthews and Gordan on Count II; granted as to Walz, Matthews, and Gordan on Count III; and granted with respect to Counts IV and V in their entirety. Plaintiff's motion to strike is denied as moot.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 9, 2011